UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERVARES WILLIAMS,

       Petitioner,

                          CASE NO. 2:08-CV-14568

v.                       JUDGE BERNARD A. FRIEDMAN
                          MAGISTRATE JUDGE PAUL J. KOMIVES

GERALD D. HOFBAUER,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     E.    *Double Jeopardy (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     F.    *Biased Judge (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     G.    *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 21
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         \*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Tervares Williams is a state prisoner, currently confined at the Marquette Branch Prison in Marquette, Michigan.

2.    On January 4, 2005, petitioner was convicted of first degree home invasion, MICH. COMP. LAWS § 750.110a; kidnapping, MICH. COMP. LAWS § 750.349; carjacking, MICH. COMP. LAWS § 750.529a; and felonious assault, MICH. COMP. LAWS § 750.82, following a bench trial in the Wayne County Circuit Court.  On January 21, 2005, he was sentenced to concurrent terms of 25-40 years' imprisonment on each of the home invasion, kidnapping, and carjacking convictions, and to a concurrent term of 3-8 years' imprisonment on the felonious assault conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHT TO BE FREE
> FROM DOUBLE JEOPARDY.  (KIDNAPING AND CARJACKING.)

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Williams*, No. 260638, 2006 WL 1156109 (Mich. Ct. App. May 2, 2006) (per curiam).

4.    Petitioner sought leave to appeal this issue to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Williams*, 477 Mich. 909, 722 N.W.2d 833 (2006).

5.    Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.    DEFENDANT MUST BE RESENTENCED BY A DIFFERENT JUDGE,
> WHERE JUDGE ANNETTE BERRY WAS SO DISTRAUGHT AS TO
> TESTIMONY GIVEN BY [A] CERTAIN PROSECUTION WITNESS
> THAT SHE BECAME INFURIATED AND INCENSED TO THE POINT
> THAT SHE EXPRESSED HER PERSONAL PHILOSOPHY THAT:

2

A. THE COURT HEARD THE TESTIMONY AND I'M NOT SURE I SLEPT FOR A COUPLE OF NIGHTS, THINKING ABOUT HOW VERY LUCKY MS. SCOTT WAS TO LIVE THROUGH THAT ORDEAL.

B. THAT'S JUST SOMETHING THAT I THINK THAT EVERY MAN, EVERY BOY, SHOULD BE TAUGHT, NEVER TO LAY THEIR HAND ON A WOMAN.

C. AND THE MINISTER TESTIFIED HERE, WELL, I COULDN'T REALLY GET INVOLVED. HE'S A MINISTER, FOR GOD'S SAKE. YOU CAN TAKE THAT BACK TO HIM, TOO.

II. THE CUMULATIVE EFFECT OF MULTIPLE ERRORS DURING TRIAL DENIED DEFENDANT HIS DUE PROCESS CLAUSE RIGHT TO A FAIR TRIAL AS GUARANTEED UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSES TO THE CONSTITUTION OF THE UNITED STATES.

A. THE CUMULATIVE EFFECT OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL. US CONST AM XIV; MICH CONST ART 1 § 17.

B. DEFENSE COUNSEL REFUSED TO INVESTIGATE AND CALL EXCULPATORY WITNESSES WHOM DEFENDANT INFORMED DEFENSE COUNSEL ABOUT, TO TESTIFY IN DEFENDANT'S BEHALF.

C. DEFENSE COUNSEL'S FAILURE TO REQUEST THE APPOINTMENT OF AN EXPERT ON EYEWITNESS IDENTIFICATION DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND THE RIGHT TO PRESENT A DEFENSE. THE DEFENDANT MEETS THE CAUSE AND PREJUDICE STANDARD SET FORTH IN 6.500(D) IN EACH OF THE ABOVE ARGUMENTS, BY SHOWING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF BOTH TRIAL AND APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS CLAUSES.

On May 9, 2007, the trial court denied petitioner's motion for relief from judgment. The Michigan

Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Williams*, 482 Mich. 971, 755 N.W.2d 169 (2008); *People v. Williams*, No. 281058 (Mich. Ct. App. Sept. 9, 2008).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 28, 2008. As grounds for the writ of habeas corpus, he raises the three claims he raised in the state courts.[1]

7.     Respondent filed his answer on April 13, 2009. He contends that petitioner's claims are barred by petitioner's procedural default in the state courts and without merit.

8.     Petitioner filed a reply to respondent's answer on June 2, 2009.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the July 30, 2004, assault and abduction of his ex-girlfriend, Marleshia Scott. At petitioner's trial the victim, two witnesses, and the officer in charge testified. As summarized by the Michigan Court of Appeals, the evidence adduced at trial established that

> Defendant broke into Scott's home, apparently angry that he had been shot by one of Scott's friends, and blaming her for "setting him up." He struck her, and then forced her to leave the home and get into her car. He attempted to drive her to an undisclosed location while informing her of his plans to kill her. She escaped by jumping from the car while at a stoplight, and ran to a nearby gas station. Defendant chased her and drove the car into her, pinning her legs against the gas station doors.

---

[1]On July 9, 2009, petitioner filed a motion to hold his habeas petition in abeyance so that he could exhaust additional claims in the state courts. Specifically, petitioner sought to present to the state court two claims relating to the trial court's actions in amending the judgment of sentence to correctly reflect that he was sentenced as an habitual offender. On March 31, 2010, I entered an Order denying the motion, concluding that a stay was not warranted because: (1) petitioner had no further state court avenue in which to pursue his claims; and (2) the claims are plainly meritless for federal habeas purposes. On April 22, 2010, the Court overruled petitioner's objections to my Order.

He left the car and began to beat her. She managed to free her legs and run to a nearby van where other people intervened. Defendant then drove off in Scott's car.

*Williams*, 2006 WL 1156109, at *1, slip op. at 1.

C.  *Exhaustion/Procedural Default*

Respondent first contends that petitioner's second and third claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural

situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). Although the trial court rejected the claims on the merits, the Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue. *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of

the difficult questions discussed above, the procedural default analysis is significantly more complicated than the analysis of petitioner's substantive claims for relief, and the Court should therefore proceed to the merits of petitioner's claims. Indeed, the Sixth Circuit itself has taken this approach. *See Roush v. Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

Further, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Double Jeopardy (Claim I)*

Petitioner first contends that his conviction for both kidnapping and carjacking violated his right to be free from double jeopardy.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense."  However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction."  *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988).  "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether

punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). Thus, the question is whether the Michigan Legislature intended that the assault of two separate victims even though accompanied by only a single intent to harm one of the victims gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id*. at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

2.    *Analysis*

Petitioner contends that his convictions for kidnapping and carjacking constituted double jeopardy because the same underlying conduct–his removing the victim from her home and driving away with the victim in her car–formed the basis of each conviction. The Michigan Court of Appeals rejected this claim, concluding that "the Legislature intended the imposition of multiple punishments for kidnapping and carjacking." *Williams*, 2006 WL 1156109, at *2, slip op. at 2. The court reasoned that "the statutes pertaining to carjacking and kidnapping prohibit conduct that is violative of distinct social norms," because "the focus of carjacking is to prohibit takings of automobiles accomplished with force," while "the focus of kidnapping is clearly on an unwilling victim being secretly confined or forcibly moved." *Id*. Because this Court is bound by the Michigan courts' interpretation of state law in deciding the double jeopardy issue, *see Rodgers*, 49 Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S. at 499 n.8.

Nor can petitioner show that his conviction violates the Double Jeopardy Clause under the *Blockburger* "same elements" test. As the Supreme Court has explained:

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not in contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted); *see also*, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Petitioner was convicted of forcible confinement kidnapping. The elements of that offense are: "(1) a forcible confinement of another within the state, (2) done willfully, maliciously and without lawful authority, (3) against the will of the person confined or imprisoned, and (4) an asportation of the victim which is not merely incidental to an underlying crime *unless* the crime involves murder, extortion or taking a hostage." *People v. Wesley*, 421 Mich. 375, 388, 365 N.W.2d 692, 696-97 (1984) (emphasis in original). The elements of carjacking are: "(1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear." *People v. Davenport*, 230 Mich. App 577, 579, 583 N.W2.d 919, 921 (1998). Thus, the kidnapping statute requires forcible confinement of a person and asportation, elements which are not required by the carjacking statute, whereas the carjacking statute requires the taking of an automobile from a person in lawful possession by force or threat of force, elements which are not required by the kidnapping statute. Thus, as the Michigan Court of Appeals concluded, "[t]he kidnapping statute and the carjacking statute contain manifestly different elements," *Williams*, 2006 WL 1156109, at *2, slip op. at 3, and thus "[u]nder the *Blockburger* . . . test . . . are not the same offense for double jeopardy

purposes." *Id*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Biased Judge (Claim II)*

In his second claim, petitioner contends that the judge was biased against him at sentencing. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id*. (internal

quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id*. at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

2.      *Analysis*

Petitioner contends that the judge was biased against him at sentencing based on the evidence adduced at trial. In support of this claim, petitioner points to a number of statements made by the

14

trial judge at sentencing. Specifically, discussing the mental anguish suffered by the victim, the judge stated: "The Court heard the testimony and I'm not sure I slept for a couple of nights, thinking about how very lucky Ms. Scott was to live through that ordeal." Sentence Tr., at 15-16. Admonishing petitioner for his treatment of the victim, the court stated: "That's just something that I think that every man, every boy, should be taught, never to lay their hand on a woman." *Id*. at 16. The trial judge also admonished a prosecution witness:

> And then I think the worst part of it all is when she does get away from you and she runs for help, I'd like to know where in the heck were those people in that gas station. I mean, where are all the good Samaritans that try to help people out? I'm going to say it because it – all I'm thinking is – in the middle of the day, there's nobody there to help out? And thank God, it was the young boy who opened up the van door. Because if you heard the testimony of this minister, which I just have to state for the record, absolutely, absolutely, disturbed me, I didn't want to get involved because I have other people in the car. Meantime, they're witnessing you beat the daylights out of this woman as she's pinned against this wall, where are the people in that gas station? Where are the people in that gas station to help out this young lady?
> And the minister testifies here, well, I couldn't get involved. He's a minister, for God sake. You can take that back to him, too."

*Id*. at 16-17. The Court should conclude that these statements do not demonstrate bias.

At the outset, taking the last statement first, petitioner has failed to explain how the trial judge's incredulity with respect to the conduct of a prosecution witness demonstrates bias against him. In any event, with respect to all three statements petitioner cannot show that the statements demonstrate judicial bias. As the Supreme Court explained in *Liteky*, "opinions formed by the judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. In other words, to require recusal, "the judge's prejudice or bias must be personal or

extrajudicial." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)). "'Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.'" *Id.* (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003).

Here, the judge's comments at sentencing were not based on some other source, but were based on the evidence presented at trial. "The sentencing judge's comments in this case were no doubt strong. The sentencing judge was manifestly impressed by the sight of the injuries suffered by the . . . victim[], as [s]he understandably could have been. Perhaps it would have been better had the sentencing judge 'tempered' . . . h[er] remarks, but . . . such remarks indicated not an impermissible bias against the petitioner, but rather an understandable reaction against the manifest serious injury suffered at the hands of the petitioner by the . . . victim[.]" *Moore v. South Carolina*, No. 88-6676, 1991 WL 15434, at *7 (4th Cir. Feb. 12, 1991); *see also*, *United States v. Lossia*, 193 Fed. Appx. 432, 437-38 (6th Cir. 2006); *Lebron v. Sanders*, No. 02 Civ. 6327, 2008 WL 793590, at *25 (S.D.N.Y. Mar. 25, 2008); *cf. United States v. Borrero-Isaza*, 887 F.2d 1349, 1357 (9th Cir. 1989) ("The fact that a judge has strong feelings about a particular crime does not automatically disqualify him from sentencing those who have committed that crime."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Ineffective Assistance of Counsel (Claim III)*

Petitioner next contends that he was denied the effective assistance of counsel at trial and on appeal. Specifically, petitioner contends that trial counsel was ineffective for failing to interview witnesses and call them to testify at trial, and for failing to obtain an expert on his state of mind at the time of the crime. He also contends that his appellate counsel was ineffective for failing to raise

these claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1. *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protects the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 688. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id.* at 695.

2.  *Trial Counsel*

Petitioner's ineffective assistance of trial counsel claims all relate to the same issue which he contends counsel should have pursued at trial. Specifically, petitioner claims that counsel should have shown that he was the victim of a prior shooting by the victim's cousin, and that the shooting had been arranged by the victim. He contends that, to prove this point, counsel should have presented a tape of the 911 call relating to that prior shooting; officers of the Detroit Police Department and agents of the Federal Bureau of Investigation who could have testified about that shooting; and an expert to testify about his state of mind at the time of the crimes with which he was charged. He contends that all of these facts would have shown that he was not in control of his actions or had a state of mind such that he could not control his actions. The Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

In the first place, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir.

1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment).  Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).  Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Here, petitioner has not identified any specific witnesses counsel should have called, nor has he provided any evidence as to the purported testimony of these witnesses.

In any event, petitioner cannot show how counsel's performance was deficient or how he was prejudiced by the absence of this testimony.  Evidence that the victim had arranged to have him killed on a prior occasion would have provided no defense to the charges against him.  For example, such evidence would not have provided a self-defense claim.  Under Michigan law, self-defense is available where the defendant "honestly and reasonably believe[d] that he [was] in *imminent* danger of death or great bodily harm and that it [was] necessary for him to exercise deadly force."  *People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30, 34 (2002) (emphasis added).  Petitioner does not allege that he was in any imminent danger from the victim at the time of the crimes.  Nor could petitioner present a diminished capacity defense, because Michigan does not recognize such a defense.  Under Michigan law "evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility[.]" *People v. Carpenter*, 464 Mich. 223, 237, 627 N.W.2d

276, 283 (2001).

Likewise, petitioner has failed to establish that he had a viable insanity defense that could have been aided by the evidence he contends counsel should have presented at trial. Even if petitioner's state of mind at the time of the crime was such that he could not have controlled his actions, this alone would not provide a basis for the insanity defense. Under Michigan law, a criminal defendant "is legally insane if, *as a result of mental illness* as defined [in state mental health laws], that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MICH. COMP. LAWS § 768.21a(1) (emphasis added). Thus, under Michigan law "legal insanity, by definition, must be the result of mental illness." *People v. Clark*, 172 Mich. App. 1, 6, 432 N.W.2d 173, 177 (1988); *see also*, *People v. Ramsey*, 422 Mich. 500, 513, 375 N.W.2d 297, 302 (1985) (noting that under the definition of insanity in § 768.21a(1), "one must be mentally ill before he can be found insane."); *People v. Girard*, 96 Mich. App. 594, 602, 293 N.W.2d 639, 643 (1980) (noting that "a finding of mental illness is necessary to a finding of insanity."). Even if the prior attempts on his life rendered petitioner unable to control his conduct, he has not alleged that he suffered from any mental illness which caused that condition. And without an underlying mental illness, petitioner's lack of capacity to appreciate the nature of or to control his conduct fails to establish an insanity defense.

Petitioner's argument is essentially that the prior attempts on his life, allegedly arranged by the victim, justified his kidnapping and assault of the victim, even though he was not in imminent danger at the time of the assault, and that counsel therefore should have presented evidence to support his claim that the victim had tried to have him killed. As explained above, however, even

if true the victim's prior conduct provided no justification or excuse for petitioner's own unlawful conduct. As the Michigan courts have long held, "[t]he safer view for society and the violated law is to consider the fact that a battery has been committed in revenge for a previous wrong, as an aggravation of the fault, instead of an excuse for it." *Heister v. Loomis*, 47 Mich. 16, 18, 10 N.W. 60, 60 (1881). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

### 3. *Appellate Counsel*

Petitioner also contends that appellate counsel was ineffective for failing to raise his trial counsel claims on direct appeal. To demonstrate prejudice resulting from appellate counsel's failure to raise an issue on appeal, petitioner must show that the omitted claim would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying trial counsel claims are without merit, and petitioner therefore cannot show that counsel was ineffective for failing to raise the claims on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### H. *Recommendation Regarding Certificate of Appealability*

### 1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this

language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Because the Michigan Court of Appeals determined that the Michigan legislature intended to punish separately the crimes of carjacking and kidnapping, and because the crimes contain different elements, the resolution of petitioner's double jeopardy claim is not reasonably debatable. Likewise, because the judge's comments at sentencing do not demonstrate bias stemming from an extrajudicial source, but rather reflect only the trial judge's disgust at the crime based on the evidence adduced at trial, the resolution of petitioner's judicial bias claim is not reasonably debatable. Finally, because evidence that the victim previously had tried to arrange for petitioner's murder would not have provided any defense to the crime, the conclusion that counsel was not ineffective for failing to present evidence of the prior attempts on petitioner's life is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the

Court should also conclude that petitioner is not entitled to a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE
Dated: 5/24/10

<table>
<tr><td>The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on May 24, 2010.<br><br>s/Eddrey Butts<br>Case Manager</td></tr>
</table>